IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 19-1431 |

O R D E R

AND NOW, this 24th day of September, 2020, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on April 6, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8) filed in the above-captioned matter on February 5, 2020,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**      **Background**

Plaintiff Christina Davis protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, and for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f, effective June 30, 2016,

1

claiming that she became disabled on August 20, 2014, due to depression, bipolar condition, and anxiety. (R. 21, 174-80, 181-89, 217). After being denied initially on October 25, 2016, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on September 6, 2018. (R. 106-10, 111-14, 116-17, 39-81). In a decision dated November 29, 2018, the ALJ denied Plaintiff's request for benefits. (R. 21-34). The Appeals Council declined to review the ALJ's decision on September 18, 2019. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

**II. Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110,

114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'"  Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the disability claim will be denied.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment.  See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922.  If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine

whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

**III.    The ALJ's Decision**

In his November 29, 2018 decision, the ALJ found that Plaintiff met the insured requirements of the Act through December 31, 2017. (R. 23). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of August 20, 2014. (R. 23-24). The ALJ also found that Plaintiff met the second

requirement of the process insofar as she had several severe impairments, specifically bipolar I disorder, post-traumatic stress disorder, and major depressive disorder. (R. 24). The ALJ found that Plaintiff's alleged limitations of stomach issues, kidney stones, and a bad neck did not qualify as severe impairments. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 25-26).

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [Plaintiff] can (on a sustained basis) understand, remember, and carry out simple, repetitive instructions but should not be required to work at a production rate or pace. She can use judgment in making simple work-related decisions. [Plaintiff] can respond appropriately to supervision, co-workers, and usual work situations in work environments and when performing tasks requiring only occasional and superficial interaction with supervisors and co-workers. Finally, [Plaintiff] should have no contact with the public, and can deal with changes in a stable, routine work setting as long as the changes are infrequent (one to two per week).

(R. 27-32). The ALJ used a vocational expert ("VE") to determine whether or not Plaintiff was capable of performing her past relevant work at Step Four of the process. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform her past relevant work as a housekeeping cleaner and commercial cleaner. (R. 32, 78). Alternatively, based on the VE's testimony, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform, including the representative occupations of merchandise marker, routing clerk, and laundry worker. (R.32-33, 79). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 34).

**IV.  Legal Analysis**

Plaintiff argues that the ALJ failed to properly analyze her mental health impairments, including the opinions of her treating psychiatrist and the consulting psychologist, in determining

that she did not meet a listing at Step Three, in formulating her RFC, and in finding that she could perform her past relevant work at Step Four.  The Court agrees and finds that the ALJ erred in not adequately considering the medical opinion evidence at Steps Three and Four of the sequential process.  Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of these issues.

Two health care professionals offered opinions regarding Plaintiff's functional capacity that indicating that she had several marked and extreme mental limitations.  On October 19, 2016, consultative examiner Lisa Osachy, Psy.D., found, *inter alia*, that Plaintiff had marked limitations in her ability to interact with others and to tolerate changes in routine.  (R. 527-33).  On August 10, 2018, Tamar Carmel, M.D., Plaintiff's treating psychiatrist,[1] opined that Plaintiff had marked limitations in maintaining concentration, persistence, and pace and extreme limitations in adapting and managing herself.  Dr. Carmel further stated that Plaintiff was seriously limited, or unable to meet competitive standards, in several areas of functioning and that she would be absent from work more than four days per month.  (R. 561-66).  The ALJ gave Dr. Osachy's opinion "limited weight," stating that it was based on a one-time examination, relied heavily on Plaintiff's self-reported limitations, and was inconsistent with the objective observations in the record.  (R. 30).  The ALJ afforded "little weight" to Dr. Carmel's opinion, stating that it was inconsistent with Plaintiff's limited and conservative treatment history and other objective observations in the record, and that it was inconsistent with Plaintiff's activities of daily living, including taking care of her niece for pay.  (R. 31).  On the other hand, the ALJ gave "great weight" to the opinion of the state agency psychological consultant (R. 82-92),

---

[1]  The ALJ, at several points in his decision, incorrectly identified Dr. Carmel as a consultative examiner.  (R. 29, 30).

which contained significantly milder limitations as to Plaintiff's functional capacity, stating that it was generally consistent with the medical evidence. (R. 30).

As noted, Dr. Carmel was Plaintiff's treating psychiatrist. When assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

While an ALJ must consider the treating relationship between the claimant and an opining doctor, when the medical opinion of a treating source conflicts with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). See also Dula v. Barnhart, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). However, the ALJ can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the

opinion.  See S.S.R. 96-6p, 1996 WL 374180 (S.S.A.), at *2 (1996).  Moreover, the ALJ "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429).   Here it appears that the ALJ's reasons for affording little weight to Dr. Carmel's opinion, and limited weight to that of Dr. Osachy, were wrong or, at the very least, incomplete.

As noted, a primary reason given for the weight afforded to the opinions of Dr. Osachy, and especially Dr. Carmel, was that they were inconsistent with what the ALJ characterized as Plaintiff's limited and conservative treatment history and the other objective observations in the record.  However, the ALJ failed to explain how Plaintiff's treatment history was conservative or how the objective observations suggested milder limitations.  Indeed, in characterizing Plaintiff's treatment history and the objective observations, the ALJ did not discuss that Plaintiff had been prescribed and had used lithium and Seroquel for her bipolar I condition.  (R. 363, 425, 511, 544, 553).  Courts have recognized that lithium and Seroquel are powerful medications, and that the prescription and use of such drugs is generally inconsistent with a finding of conservative mental health treatment.  See, e.g., Martinez v. Saul, No. 2:18-CV-02440-EJY, 2020 WL 2025367, at *7 (D. Nev. Apr. 27, 2020); Pearson v. Berryhill, No. ED CV 17-563-E, 2017 WL 4862756, at *4 (C.D. Cal. Oct. 25, 2017); Brian H. v. Saul, No. 5:19-CV-00029, 2020 WL 4551672, at *9 (W.D. Va. July 13, 2020), report and recommendation adopted, No. 5:19-CV-29, 2020 WL 4548127 (W.D. Va. Aug. 6, 2020).  Moreover, Plaintiff was admitted to an inpatient program in June of 2016, and Dr. Carmel, in October of 2017, discussed with Plaintiff the possible need for further hospitalization.  (R. 342, 550).  The relative frequency with which her treating providers have requested or discussed inpatient treatment suggests that labeling her treatment history as

conservative is misleading. It is also noted that the fact that Plaintiff has been homeless for extended periods is certainly relevant to the level of treatment she has received.

The Court is not suggesting that the record conclusively demonstrates that Plaintiff's treatment history has not been "conservative," or that such a distinction is outcome determinative. However, merely labeling her treatment history as conservative while failing to acknowledge her use of particularly powerful psychotropic drugs and her history of inpatient care (and the suggestion of her psychiatrist that she may require more inpatient treatment) is not enough to convince the Court that the ALJ's decision as to the weight to be afforded to the medical opinions was sufficiently supported by the record. This is particularly true in light of the greater weight generally afforded to the opinions of a claimant's treating physicians. See Fargnoli, 247 F.3d at 43; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Absent a more thorough discussion, the Court cannot say whether the ALJ rejected Plaintiff's treating and consulting physicians' opinions demonstrating marked and extreme limitations for "no reason or the wrong reason." Plummer, 186 F.3d at 429. Likewise, it cannot determine whether the ALJ was justified in giving greater weight to the opinion of the state agency psychological consultant.[2] As such, the matter must be remanded. The Court leaves to the discretion of the Commissioner whether this case should be assigned to a different ALJ on remand.[3]

---

[2] The Court also notes that the relative consistency between the opinions of Dr. Osachy and Dr. Carmel, and their inconsistency with the state agency psychological consultant's opinion, was not discussed in any significant way.

[3] The Court does not reach Plaintiff's argument regarding whether, pursuant to the definition of housekeeping cleaner and commercial cleaner in the Dictionary of Occupational Titles, Plaintiff's RFC would permit her to perform her past relevant work. The ALJ should consider this issue on remand.

## V. Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ at Steps Three and Four of the sequential analysis are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:		Counsel of record